United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BULL, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>    Defendants. | No. C 03-01840 CRB<br><br>**ORDER GRANTING SUMMARY JUDGMENT IN PART, GRANTING LEAVE TO AMEND, AND DENYING MOTION FOR DECERTIFICATION EXCEPT AS TO THE SAFETY CELL CLASS** |

This class action challenges the former policies and practices of the City and County of San Francisco ("CCSF") related to the performance of strip searches on certain classes of pre-arraignment arrestees at CCSF's jails.  Presently before the Court are (1) a Motion for Partial Summary Judgment and to Decertify Class (Dkt. 300) and (2) a Motion to Amend the Complaint (Dkt. 291).  These Motions were filed in response to this Court's request that the parties address the impact in this case of Bull v. City and County of San Francisco, 595 F.3d 964 (9th Cir. 2010) (hereinafter "Bull").[1]  After carefully reviewing the memoranda and evidentiary record submitted by the parties, and having had the benefit of oral argument, the Court hereby GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment and to Decertify Class and GRANTS Plaintiffs' Motion for Leave to Amend subject to certain caveats and limitations set forth herein.

---

[1] Bull held that CCSF's Classification Search Policy, pursuant to which CCSF searched all arrestees classified for housing in the general population, was constitutional on its face.

## I. BACKGROUND

Prior to <u>Bull</u>, this Court certified the following class:

> All persons who, during the applicable period of limitations, and continuing to date, were arrested on *any* charge *not* involving weapons, controlled substances, or a charge of violence, and *not* involving a violation of parole or a violation of probation (where consent to search is a condition of such probation), *and* who were subjected to a blanket visual body cavity strip search by defendants before arraignment at a San Francisco County jail facility without any individualized reasonable suspicion that they were concealing contraband. This class also includes 1) all arrestees who were subjected to subsequent blanket strip search(es) before arraignment after the initial strip search, without any reasonable individualized suspicion that they had subsequently acquired and hidden contraband on their persons; and 2) all persons who, prior to arraignment, were subjected to blanket visual body cavity search(es) incident to placement in a "safety cell" at any of the San Francisco County jails.

June 10, 2004 Mem. and Order (Dkt. 162) at 12-13.

In the summer of 2005, Plaintiffs moved for partial summary judgment and Defendant Sheriff Hennessey moved for partial summary judgment on the basis of qualified immunity. This Court granted both motions in part. In particular, this Court held, among other things, that (1) Defendants' blanket policy of strip searching all arrestees classified for housing in a county jail was unconstitutional; (2) Defendants' policy of strip searching individuals placed in safety cells, without regard for the reasons for the placement, was unconstitutional; and (3) Defendant Sheriff Hennessey was not entitled to qualified immunity for his decision to create a blanket policy of strip searching all individuals classified for housing in the general jail population. September 22, 2005 Mem. and Order (Dkt. 220) at 10, 14-15, 18; February 23, 2006 Am. Mem. and Order (Dkt. 247) at 13, 22, 25.

Defendants filed a notice of appeal on the qualified immunity issue on October 21, 2005 (Dkt. 220) resulting in a stay of proceedings in this Court. A divided panel affirmed on October 29, 2007, but the Ninth Circuit reheard the matter *en banc* and issued its opinion, reversing, on February 9, 2010.

The question before the Ninth Circuit in <u>Bull</u> was a narrow one: whether Defendants' policy of strip searching all arrestees assigned a custody level and scheduled for custodial

2

housing was unconstitutional on its face. The Court concluded that the policy was constitutional: "San Fransisco's policy requiring strip searches of all arrestees classified for custodial housing in the general population was facially reasonable under the Fourth Amendment, notwithstanding the lack of individualized suspicion as to the individuals searched." Bull, 595 F.3d at 982. In support of its conclusion, the Court noted that "there was a 'valid, rational connection between the prison regulation and the legitimate interest put forward to justify it'" and that the regulation "'was reasonably related to [the] legitimate penological interests of the jail . . . .'" Bull, 595 F.3d at 976-977 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

In response to the Ninth Circuit's decision, this Court held a case management conference on July 23, 2010. See Tr. of July 23, 2010 Status Conference (Dkt. 290). At that conference, the Court directed the parties to brief what remained in the case as a result of the Ninth's Circuit's ruling. In response to that direction, the parties filed the present Motions.

## II.     DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment as to all class claims and seek the reversal of this Court's earlier grants of summary judgment in favor of Plaintiff Timbrook and holding that "Defendants' policy of strip searching all individuals placed in a safety cell, without regard for the reasons for the particular placement, is unconstitutional on its face." Feb. 23, 2006 Am. Mem. and Order (Dkt. 247) at 22. Part of this Motion is uncontested, but Plaintiffs challenge other portions as over-broad.

### A.     Plaintiffs Agree to a Partial Grant of Summary Judgment as to Certain Class Claims and Plaintiff Timbrook

Defendants are entitled to a grant of summary judgment as to the class claims based on an initial search performed pursuant to the Classification Search Policy. Indeed, Plaintiffs acknowledge as much, stating that "Defendants' proposed partial summary judgment should be granted only with respect to the class claim concerning the facial validity of Defendants' Classification Strip Search Policy . . . ." Pls.' *Errata* to Their Opp'n to Defs.' Mot. for Partial Sum. J. and to Decertify Class (Dkt. 308) at 9. Thus, this Court enters summary judgment in Defendants' favor with respect to the class claim predicated on the facial

3

invalidity of initial searches performed pursuant to the Classification Search Policy[2] and hereby amends its earlier summary judgment Order as to the partial facial invalidity of the Safety Cell Search Policy because arrestees searched once pursuant to the Classification Search Policy before being put in safety cells no longer have safety cell class claims.

Plaintiffs also agree that Defendants' Motion should be granted insofar as it concerns Plaintiff Timbrook's claim based on her strip search conducted pursuant to the Classification Search Policy. Pls.' *Errata* to Their Opp'n to Defs.' Mot. for Partial Sum.J. and to Decertify Class (Dkt. 308) at 8. The Court hereby reverses its summary judgment Order in her favor on that issue and grants partial summary judgment in Defendants' favor as to Plaintiff Timbrook's claim under the Classification Search Policy.

### B. Contested Summary Judgment Issues

#### 1. Section 4030 Class Claims

Defendants assert that they are entitled to summary judgment on the class claims based on alleged violations of California Code Section 4030. This is because, in Defendants' view, the Classification Search Policy by its terms afforded arrestees "up to 12 hours" to post bail before being searched. Defs.' Mot. for Sum. J. and to Decertify Class (Dkt. 300) at 13. Defendants are entitled to summary judgment on the Section 4030 class claim to the extent that claim is based on the facial invalidity of the Classification Search Policy. By its terms the Classification Search Policy does not violate Section 4030. However, to the extent Plaintiffs are capable of alleging a class of misdemeanor arrestees who were searched before being provided a reasonable opportunity of at least three hours to post bail, that group has a viable Section 4030 class claim, and the grant of summary judgment in Defendants' favor does not extend to it.

---

[2] This summary judgment includes the claims of arrestees searched pursuant to the Classification Search Policy but released before introduction into the general jail population. Bull authorized searches upon *classification* and did not further require that the arrestee ultimately be housed. However, the decision to classify must have been legitimate. If an arrestee who was never housed can plead that CCSF classified him without any intention to house him as a pretext for conducting a suspicionless search such arrestee could still state an individual claim after Bull.

4

### 2. Class Claims Related to Searches Performed Pursuant to the Safety Cell Search Policy

Defendants also assert that <u>Bull</u> requires summary judgment in their favor as to searches performed pursuant to the Safety Cell Search Policy and that this Court should reverse its summary judgment holding the Safety Cell Search Policy invalid with respect to three of six scenarios in which arrestees were placed in safety cells. Plaintiffs do not contest this issue with respect to those "previously classified for housing, strip searched [once], and then placed in safety cells . . . ." Pls.' *Errata* to Their Opp'n to Defs.' Mot. for Partial Sum. J. and to Decertify Class (Dkt. 308) at 10.

<u>Bull</u> does not require this Court to reverse its earlier summary judgment decision on this issue. Although <u>Bull</u> talked about the importance of deference to jail officials, those overarching principles of deference existed before <u>Bull</u>, and this Court considered them before concluding that the Safety Cell Search Policy was partially unconstitutional on its face in requiring suspicionless searches of arrestees placed in safety cells pursuant to a determination that they fit into one or more of the following three categories: (1) bizarre behavior/destruction of property (category 1); (2) gravely disabled/housing unavailable (category 3); and (3) request to use the safety cell (category 5). Feb. 23, 2006 Am. Mem. & Order (Dkt. 247) at 21. Moreover, the overarching theory behind <u>Bull</u>'s acceptance of suspicionless searches of arrestees classified for housing – concern about introduction of contraband into the general prison population – does not apply to arrestees placed alone in safety cells. Indeed, the Ninth Circuit has characterized <u>Bull</u> as an "exception" to the <u>Giles v. Ackerman</u>, 746 F.2d 614 (9th Cir. 1984) line of cases in which reasonable suspicion is required for searches of arrestees charged with minor offenses and has noted further that "it left undisturbed our line of precedent requiring reasonable suspicion to strip search arrestees charged with minor offenses who are not classified for housing in the general population." <u>Edgerly v. San Fransisco</u>, 599 F.3d 946, 957 (9th Cir. 2010) (emphasis added).

Accordingly, Defendants are entitled to summary judgment as to those members of the class who were searched once pursuant to the Classification Search Policy and then

5

placed into safety cells. With the exception of that caveat, the Court's prior summary judgment ruling on the Safety Cell Search Policy stands.

### 3. Cross Claim for Declaratory Relief

Defendants also move for summary judgment as to their cross claim seeking a declaration that their new policies (implemented in 2004) are constitutional in light of Bull. These new policies are not being challenged in this lawsuit, and the Court declines to issue what would amount to an advisory opinion as to their validity. See Southern California Painters & Allied Trades, Dist. Council No. 36, 558 F.3d 1028, 1035 (9th Cir. 2009).

## III. DEFENDANTS' MOTION TO DECERTIFY CLASS

Defendants argue that, in light of Bull, the common issue in this case has been resolved and the class should be decertified. Defs.' Mot. for Partial Sum. J. and to Decertify Class (Dkt. 300) at 16. Plaintiffs do not object to decertification of the safety cell claims because this Court's previous summary judgment Order, combined with Bull, has resolved the safety cell class issues, but Plaintiffs otherwise assert that decertification is improper.

Defendants' Motion to Decertify is denied with the exception of the safety cell class because the class as certified still has viable claims.

### A. Standard of Review

This Court has discretion to decertify if the requirements of Rule 23 are not satisfied. Gonzales v. Arrow Fin. Serv. LLC, 489 F. Supp. 2d 1140, 1153 (S.D. Cal. 2006). It is the obligation of the party seeking decertification to show that Rule 23's requirements are no longer met, and the standards applied in assessing whether a class should be decertified are the same as those used to determine whether a class should be certified in the first instance. Id. at 1153-54.

Rule 23(a) has four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. If all four of those requirements are met, class certification is proper if any one of the following three criteria also exist: (1) prosecution of separate actions would create a risk of (a) incompatible standards for the party opposing the class or (b) individual adjudications would, as a practical matter, be dispositive of the other members of

6

the putative class or otherwise impede their ability to protect their interests; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or (3) common questions of law or fact predominate and a class action is superior to other methods of adjudication.  Fed. R. Civ. P. 23(b).

The critical question with respect to decertification is whether class claim(s) survive Bull.  The answer is "yes."  Specifically, the class certified by this Court included "all arrestees who were subjected to subsequent blanket strip search(es) before arraignment after the initial strip search, without any reasonable individualized suspicion that they had subsequently acquired and hidden contraband on their persons."  June 10, 2004 Mem. and Order (Dkt. 162) at 12-13.  Bull did not address the constitutionality of successive suspicionless strip searches, and the class as certified is therefore still viable with respect to arrestees searched a second time without any reasonable individualized suspicion that they had subsequently acquired and hidden contraband after the initial strip search.  Accordingly, Defendants' Motion to Decertify is denied with the exception of the safety cell class.

## IV.	PLAINTIFFS' MOTION TO AMEND

Plaintiffs propose to file a Third Amended Complaint ("Proposed TAC") that narrows both the legal theories presented and the class claims and also names new sub class representatives.

### A.	Modified Legal Theories and Classes

In the Proposed TAC, Plaintiffs set forth three policies that they believe (a) are still unconstitutional following Bull and (b) were encompassed within their First and Second Amended Complaints.

(1)	"[D]efendants' blanket policy of subjecting detainees in their custody who are members of the previously certified class to *second* strip and visual body cavity searches upon their initial arrival in their housing units . . . after they have already been strip searched at the time they were assigned a custody level and scheduled for custodial housing ('classification') on the grounds that there is no rational penological purpose for such successive strip searches";

7

(2) "[D]efendants' blanket practice and policy of subjecting detainees in their custody who are members of the previously certified class and who were not subsequently housed, to strip and visual body cavity searches in the booking area on the grounds there is no rational penological purpose for such strip searches"; and

(3) "[D]efendants' practice and policy of subjecting misdemeanor detainees in their custody, who are members of the previously certified class, to strip searches before they have had access to a phone or a reasonable opportunity to post bail, for a period of at least three hours, on the basis of their purported consent, or upon their refusal to consent, and/or without authorization of the facts supporting the determination of reasonable suspicion for the strip search, in violation the requirements of California Penal Code Section 4030."

Proposed TAC ¶ 56.

Plaintiffs also set forth three "subclasses" of class claimants.

(1) "detainees subjected to a *second* strip and visual body cavity search, upon their initial arrival in the housing units . . . pursuant to Defendants' blanket written policy, after they have already been strip searched, then continuously segregated, handcuffed and/or shackled while under escort pursuant to the Defendants' blanket written policy and customary procedure";

(2) "detainees subjected to a strip search while being held in the booking area, pursuant to Defendants' blanket policy, who were *not* subsequently classified and/or housed in the general population"; and

(3) "misdemeanor detainees subjected to strip searches before they have had access to a phone or a reasonable opportunity to post bail, for a period of at least three hours, (sometimes on the basis of their purported consent, or upon their refusal to consent) without written documentation of the basis of reasonable suspicion, in violation of the requirements of California Penal Code Section 4030."

8

Proposed TAC ¶ 58.

### B. Standard of Review

Pursuant to Rule 15(a)(2) where, as here, a party's time for amending a complaint as a matter of right has passed, the "party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." In deciding whether to grant leave, the court should consider the following factors: bad faith, undue delay, repeated failure to correct deficiencies by prior amendment, prejudice to the opposing party, and potential futility. DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 & n.3 (9th Cir. 1987). The non-moving party bears the burden of showing why leave to amend should not be granted. Genetech, Inc. v. Abbott Labs., 127 F.R.D. 529, 530-31 (N.D. Cal. 1989).

### C. Discussion

#### 1. Another District Court Faced with a Nearly Identical Situation Permitted Amendment

In a case similar to this and also as a result of Bull, Judge Henderson recently granted a motion for leave to amend a complaint challenging (on a class basis) the strip search policies in Contra Costa County's jails. Barnett v. County of Contra Costa, No. C04–4437, 2010 WL 2528523 (N.D. Cal. June 18, 2010).[3] The Barnett court based its decision to allow amendment on the facts that (1) the proposed amended complaint narrowed the claims previously asserted and did not assert new claims; (2) all members of the proposed class were members of the class previously certified; and (3) the claims arose out of the same "conduct, transaction, or occurrence" previously alleged and thus related back under Rule 15(c)(1)(B). Id. The court found no undue delay or bad faith because, although the case had been pending for six years, the proposed amendment resulted from Bull's change in the law.

Applying the three criteria from Barnett to this case counsels toward allowing amendment. The Proposed TAC narrows claims previously asserted. Moreover, the three

---

[3] The plaintiffs in Barnett, like Plaintiffs here, sought amendment to challenge "second, successive strip and visual body cavity searches without having [] a rational penological purpose for such second strip search[es]." Id. at *3 (citations omitted).

9

1 proposed "subclasses" – Plaintiffs subjected to second strip searches, Plaintiffs strip searched
2 but never classified,[4] and Plaintiff misdeameants not given a reasonable opportunity to post
3 bail before being strip searched – were all encompassed within the original class. Finally,
4 "this case has always been about the constitutionality of the blanket strip search policy
5 employed by Defendants, and the certified class explicitly 'include[d] arrestees who were
6 subjected to subsequent blanket strip searches before arraignment after the initial strip
7 search.'" Id. at *3 (see also June 10, 2004 Mem. and Order (Dkt. 162) at 12-13).

### 2. Defendants' Three Primary Arguments Against Granting Leave to Amend are Unpersuasive

#### a. Plaintiffs' Motion for Leave to Amend is Not Premature

Defendants argue that the proper approach for this Court to take in resolving the present motions is to grant the motion for summary judgment and decertification and deny the motion for leave to amend as premature. This argument is moot because the Court has ruled on Defendants' summary judgment and decertification Motion. In any case, on the basis of judicial efficiency and fairness the Court concludes that best course is to rule now on Plaintiffs' Motion for Leave to Amend. See Kremens v. Bartley, 431 U.S. 119, 134-54 (1977) (remanding for consideration of class definitions following an intervening change in the law that mooted the claims of class representatives and many class members); Catholic Social Services v. Reno, 232 F.3d 1139, 1146 (9th Cir. 2000) (noting that, as between dismissing a complaint and allowing amendment following a change in the law, "the far better course" is "to allow amendment of the complaint to satisfy requirements imposed for the first time while the case was on appeal.").

//
//
//

---

[4] Plaintiffs actually define this proposed subclass as arrestees strip searched but not classified or housed. In light of this Court's grant of summary judgment to Defendants as to all arrestees classified for housing, this subclass must be limited to only those arrestees strip searched without having been classified. An arrestee may have individual claims that classification in his particular case was a pretext for performing an otherwise impermissible search, but by its nature such claim will turn on individual facts.

10

### b. The Proposed TAC is not Futile

#### i. Proposed Subclass Claims

Bull did not address the permissibility of multiple strip searches, and those members of the original class (now subclass 1) who were searched a second time without any reasonable individualized suspicion that they had subsequently acquired and hidden contraband on their persons still have non-futile class claims. The Proposed TAC also sets forth two additional subclasses: subclass (2) composed of arrestees who were not classified but who were subjected to a suspicionless strip search; and subclass (3) composed of misdemeanor arrestees subjected to a search without being afforded a reasonable opportunity of at least three hours in which to post bail. The claims of arrestees who fall into one or more of these three categories are not futile.

The amended complaint must make clear which named Plaintiffs are acting as subclass representatives, and within 30 days of this Order Plaintiffs shall file a motion to narrow the class definition to include only the subclass claims. If Defendants have Rule 23 issues with one or more of the subclasses they can raise those issues in response to Plaintiffs' motion.

#### ii. Proposed Plaintiffs Arrested for a Crime Involving Drugs, Weapons, or Violence

Defendants note that the class previously certified by the Court does not include individuals arrested on charges involving weapons, controlled substances, or violence. Defendants argue that Plaintiffs Smith, Marron, Noh, and Deranleau were all arrested for such crimes and thus were not and cannot be class members or representatives of a subclass. In light of the Court's decision to allow amendment because of the non-futility of the subclass claims, the Court will defer ruling on whether these Plaintiffs can state claims in their individual capacities or act as class members or subclass representatives.

//
//
//
//

11

      **c.    Plaintiffs' Delay in Seeking Amendment as to the Subclass Claims is Excusable in Light of <u>Bull</u> and Defendants Will Not Be Prejudiced by Allowing Leave to Amend as to the Subclass Claims or Plaintiffs Already Named**

      Defendants argue that there was no reason for Plaintiffs' delay in asserting the new legal theories and claims in the Proposed TAC. However, as in <u>Barnett</u>, "this case has always been about the constitutionality of the blanket strip search policy employed by Defendants, and the certified class explicitly 'include[d] arrestees who were subjected to subsequent blanket strip searches before arraignment after the initial strip search.'" 2010 WL 2528523 at *3. The originally certified class also included the proposed subclass claimants. Thus, the core of the case has been narrowed, not recreated, and all but two of the named Plaintiffs that Defendants challenge were named in the Second Amended Complaint.

      Moreover, the reason for the narrowed legal theory presented in the Proposed TAC is the Ninth Circuit's decision in <u>Bull</u>, and the delay associated with that appellate process was brought on by Defendants' decision (however reasonable it was) to seek an interlocutory appeal. <u>See</u> <u>Price v. Kramer</u>, 17 Fed. Appx. 508 (9th Cir. 2000) ("[T]he issue of qualified immunity can be appealed from the final judgment even though the defendants did not take an interlocutory appeal."); <u>Bailey v. Viacom, Inc.</u>, Civil Action No. 04-607, 2008 WL 1818435 at *2 (W.D. Pa. Apr. 22, 2008) (declining to "penalize" plaintiffs for a delay that resulted from the defendant's pursuit of an interlocutory appeal).

      Accordingly, as a general matter, Plaintiffs' delay in presenting their claims as they do in the Proposed TAC is justified by <u>Bull</u>, and Defendants will not be unduly prejudiced by allowing this case to proceed with the existing named Plaintiffs and subclass claims.

      **d.    Plaintiffs' Delay in Seeking Amendment as to Newly Named Plaintiffs Yearwood and Vowel is Not Excusable and Defendants Will be Prejudiced by Their Addition to the Case**

      With respect to undue delay, <u>Bull</u> justifies allowing Plaintiffs to file an amended complaint to winnow out claims that are no longer viable and to rephrase the remaining claims in a way that is logically and legally consistent with that case. However, it does not justify them adding named Plaintiffs whose claims were not affected by <u>Bull</u> and who could,

12

therefore, have been named years ago. All three of the subclasses in the Proposed TAC assert claims unaffected by Bull:

> Subclass 1 – arrestees searched a second time without suspicion – was not affected by Bull because Bull did not address whether a second suspicionless search was permissible.
>
> Subclass 2 – arrestees searched without classification – was by its terms not affected by Bull.
>
> Subclass 3 – misdemeanor arrestees not afforded a reasonable opportunity of at least three hours in which to post bail – was not affected by Bull because Bull did not reach any state law issues.

Thus, Bull does not provide a valid explanation for Plaintiffs' decision not to have included Yearwood and Vowel in the Second Amended Complaint.

Allowing Plaintiffs to add Yearwood and Vowel now would prejudice Defendants because it means forcing them to conduct discovery as to matters they either have no meaningful record of or about which memories will have dramatically faded. See In re Flash Memory Antitrust Litig., No. C 07-0086 SBA, 2010 WL 2465329 (N.D. Cal. June 10, 2010) (finding prejudice and undue delay in seeking to substitute new class representative thirty months after commencing suit and eighteen months after an amended complaint); In re Flash Memory Antitrust Litig., No C 07-0086 SBA, 2010 WL 2332081, at *17 (N.D. Cal. June 9, 2010) (finding undue prejudice where, years into a case, adding new class representatives "would require Defendants to conduct new and/or additional discovery that would not otherwise have been required had Plaintiffs joined the appropriate representatives in the first instance"); Osakan v. Apple Am. Group, No. C 08-4722 SBA, 2010 WL 1838701, at *5 (N.D. Cal. May 5, 2010) (finding undue prejudice in the "proposed joinder of four new class representatives [because] Defendants [] have been preparing their defense based on the identity of the class representative[s] . . . identified in the original complaint as well as the amended complaint.").

Accordingly, the Court finds that Plaintiffs' delay in seeking to add Yearwood and Vowel is unjustified and further concludes that allowing their inclusion in the amended

complaint would be unduly prejudicial to Defendants. Therefore, although the Court is granting leave to amend that leave does not extend to the addition of Yearwood and Vowel.

## V. CONCLUSION

Bull has changed the complexion of this litigation, but it has not ended it. The originally certified class included arrestees searched a second time without any reasonable individualized suspicion that they had subsequently acquired and hidden contraband, and that claim has not been rendered futile by Bull. Moreover, Plaintiffs will be afforded the opportunity to set forth the subclass claims based upon (1) non-classification searches and (2) searches of misdemeanor arrestees not afforded a reasonable opportunity to post bail because members of those subclasses were members of the already certified class.

**IT IS SO ORDERED.**

Dated: September 8, 2010

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE