IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BULL, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO, et al., <br><br> Defendants.              / | No. C 03-01840 CRB <br><br> **ORDER GRANTING MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART MOTION TO ALTER OR AMEND JUDGMENT** |

There are two Motions presently before the Court. First, Plaintiffs move to alter or amend this Court's Order granting them leave to amend but not including in that leave permission to add a new named Plaintiff (Brian Vowell) as a subclass representative. See Sept. 8, 2010 Order (Dkt. 314) at 12-14;[1] Sept. 20, 2010 Order (Dkt. 317) (granting Motion for Leave to File Motion for Reconsideration). Second, Defendants move to dismiss all state-law strip search claims against the City seeking damages based on alleged violations of Cal. Penal Code § 4030.

Plaintiffs' Motion to Alter the Judgment is GRANTED in part and DENIED in part. In particular, Plaintiffs are permitted to add Vowell as a subclass representative for the group of arrestees searched absent classification (subclass 2) but not for the group making claims

---

[1] Page citations to e-docketed filings are to the page number of the e-filing.

under section 4030 (subclass 3). Defendants' Motion to Dismiss is GRANTED, and Plaintiffs' damage claims against the City for violation of section 4030 are dismissed.

## I.   THE MOTION TO ALTER OR AMEND JUDGMENT

The gist of Plaintiffs' Motion to Alter the Judgment is that the Court was "clearly wrong" in denying them leave to add a new named Plaintiff and Class Representative who they now imply is necessary (or at least very helpful) for the proper presentation of two of their subclass claims.[2] The Court was clearly wrong, in Plaintiffs' view, because the Ninth Circuit's decision in <u>Bull</u> eliminated claims related to "classification" strip searches, and where, as here, a class has already been certified, courts routinely allow substitution of new representatives with viable claims following a change in the law. See <u>Bull v. San Fransisco</u>, 595 F.3d 964 (9th Cir. 2010).

### A.   Background

This Court certified a class in this case in 2004.[3] The parties then filed motions for summary judgment on various issues. In disposing of those Motions, this Court held, among other things, that (1) Defendants' blanket policy of strip searching all arrestees classified for

---

[2] Plaintiffs admit that they did not make this argument to the Court in moving for leave to amend. They contend, however, that their failure to do so was justified because it was obvious from the context of their Motion that this Plaintiff was necessary (or at least very helpful) for the presentation of one or more subclass claims.

[3] That class was defined as follows:

> All persons who, during the applicable period of limitations, and continuing to date, were arrested on *any* charge *not* involving weapons, controlled substances, or a charge of violence, and *not* involving a violation of parole or a violation of probation (where consent to search is a condition of such probation), *and* who were subjected to a blanket visual body cavity strip search by defendants before arraignment at a San Fransisco county jail facility without any individualized reasonable suspicion that they were concealing contraband. This class also includes 1) all arrestees who were subjected to subsequent blanket strip search(es) before arraignment after the initial strip search, without any reasonable individualized suspicion that they had subsequently acquired and hidden contraband on their persons; and 2) all persons who, prior to arraignment, were subjected to blanket visual body cavity searche(es) incident to placement in a "safety cell" at any of the San Francisco County jails.

June 10, 2004 Mem. and Order (Dkt. 162) at 12-13.

2

1 housing in a county jail was unconstitutional; and (2) Defendant Sheriff Hennessey was not
2 entitled to qualified immunity for his decision to create a blanket policy of strip searching all
3 individuals classified for housing.  Sept. 22, 2005 Mem. and Order (Dkt. 220) at 10, 14-15;
4 Feb. 23, 2006 Am. Mem. and Order (Dkt. 247) at 13, 22, 25.

Defendant Hennessey took an interlocutory appeal on the qualified immunity issue, and the Ninth Circuit concluded that the City's "policy requiring strip searches of all arestees classified for custodial housing in the general population was facially reasonable under the Fourth Amendment, notwithstanding the lack of individual suspicion as to the individuals searched."  Bull, 595 F.3d at 982.

In response to the Ninth Circuit's decision, Plaintiffs moved to amend their Complaint.  Mot. to Am. Cmpl. (Dkt. 291).  The Court granted that motion in part, allowing Plaintiffs to amend to set forth three "new" subclasses composed of members of the originally certified class who still have viable claims.  Sept. 8, 2010 Order (Dkt. 314).  However, the Court did not permit Plaintiffs to add two new named Plaintiffs (and, it is now clear, proposed subclass representatives).  Id. at 12-14.  This was because (1) the new Plaintiffs' claims were not affected by Bull because they did not concern a classification strip search and (2) allowing their addition after so lengthy a time has passed since the events at issue would be unduly prejudicial to Defendants.  Id.

Plaintiffs did two things in response to the Court's Order.

First, they filed a Fourth Amended Complaint, which, among other things, sets forth three subclasses.  Fourth Am. Cmpl. (Dkt. 315) at 15-16.

- Subclass 1:  detainees in [Defendants'] custody who are members of the previously certified class subjected to *second* strip and visual body cavity searches upon their initial arrival in their housing units, prior to be intermingled with the general population, after they have already been strip searched at the time of housing "classification";

- Subclass 2: detainees in [Defendants'] custody who are members of the previously certified class who were subjected to strip searches without reasonable suspicion *before* they were classified for housing in the general population;

3

- Subclass 3: misdemeanor detainees in [Defendants'] custody, who are members of the previously certified class, eligible for the protection of California Penal Code Section 4030, who were subjected to strip searches without reasonable suspicion *before* they have had access to a phone or a reasonable opportunity to post bail, for a period of at least three hours.

Id.

Second, Plaintiffs simultaneously filed a Motion for Leave to File a Motion for Reconsideration of the decision to deny them leave to add Vowell as a named Plaintiff/Class Representative. Dkt. 316. The Court granted Plaintiffs leave to file the motion for reconsideration, they filed that motion, and it is now ripe for disposition.

### B. Standard of Review

"A Rule 59(e) motion is appropriate 'if the district court: (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law.'" Circuit City Stores, Inc. v. Mantor, 417 F.3d 1060, 1063 n.1 (9th Cir. 2005) (quoting Sch. Dist. No. 13, Multnomah Cty. v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993)). The district court should not reverse itself if its initial decision was merely wrong. Rather, it should do so only if the prior decision was "clearly" wrong. Leslie Salt v. United States, 55 F.3d 1388, 1393 (9th Cir. 1995).

### C. Discussion

#### 1. After a Class is Certified Courts Often Allow Plaintiffs to Swap in Representatives with Live Claims for Those Whose Claims Have Been Mooted

The starting point for Plaintiffs' argument that this Court clearly erred in not allowing them to add Vowell as a new Class Representative is the proposition that, once certified, "courts regularly allow replacement of the named plaintiff." Hitt v. Arizona Beverage Co., No. 08cv809WQH-POR, 2009 WL 4261192, at *4 (S.D. Cal. Nov. 24, 2009); see also Birmingham Steel Corp. v. Tennessee Valley Auth., 353 F.3d 1331, 1336-37 (11th Cir. 2003) ("[O]nce certified, a class acquires a legal status separate from that of the named plaintiffs" and "efficient judicial administration weighs in favor of allowing an opportunity

4

for a new and proper class representative to enter the case and litigate the interests of the [class]" when the named plaintiff is dismissed).

Plaintiffs further assert that the Supreme Court has sanctioned the very approach they are trying to take here. In <u>Kremens v. Bartley</u>, the Court, after noting that a change in the law mooted the claims of class representatives, remanded to the district court "for reconsideration of the class definition, exclusion of those whose claims are moot, <u>and substitution of class representatives with live claims.</u>" 431 U.S. 119, 135 (1977) (emphasis added). Accordingly, in Plaintiffs' view, <u>Bull</u> justifies them swapping out class representatives whose claims have been mooted and swapping in representatives with live claims. See <u>Catholic Social Serv., Inc. v. Ashcroft</u>, 206 F.R.D. 654, 662 (E.D. Cal. Feb. 15, 2002) (modifying class definition and allowing substitution of new named plaintiffs following a complex series of procedural and substantive events that, absent amendment, would have rendered null certain class members' claims).

Thus, the question is whether <u>Bull</u> affected the <u>fitness of the originally named representatives to represent the interests of class members now contained within subclasses 2 and 3.</u>[4] If it did, Plaintiffs have a legal basis for adding Vowell as a new representative for these subclasses. If it did not, then adding Vowell as new representative after so long a delay in the proceedings is improper. Cf. <u>Lidie v. State of Cal.</u>, 478 F.2d 552, 555 (9th Cir. 1973) ("[W]here the original plaintiffs were never qualified to represent the class, a motion to intervene [by several additional plaintiffs] represents a back-door attempt to begin the action anew, and need not be granted.").

<u>Bull</u> did affect the fitness of the original class representatives to represent the group of class members now contained within subclass 2 but not subclass 3.

Prior to <u>Bull</u>, class members in what is now subclass 2 were adequately represented. This is because the originally certified class drew no distinction between classification searches and non-classification searches. Any search conducted without reasonable

---

[4] Subclass 1 – detainees subjected to a *second* strip search after classification but before housing – was expressly part of the original class certification although not then denominated as a subclass. Plaintiffs do not attempt to add Vowell as a representative of that subclass.

5

1 suspicion was unlawful before <u>Bull</u>.  Accordingly, it was not until <u>Bull</u> that Plaintiffs needed
2 to have "unique" representation for class members now grouped within subclass 2.  Because
3 <u>Bull</u> rendered previously adequate representatives inadequate as to class members now in
4 subclass 2, Plaintiffs are justified in seeking to add representatives whose claims are still
5 valid.

6       The foregoing analysis does not hold for class members now contained within
7 subclass 3.  This is because the section 4030 claims being pursued by subclass 3 turn in large
8 part on issues unrelated to Defendants' reason for the search.  Specifically, a section 4030
9 claim requires proving that a misdemeanor arrestee was searched without having been
10 provided a reasonable opportunity of at least three hours in which to post bail.  Thus, if
11 Plaintiffs intended to pursue a section 4030 claim, even before <u>Bull</u>, they needed to have a
12 representative who was searched before being given a reasonable opportunity of at least three
13 hours in which to post bail.  Plaintiffs were made aware of potential representation issues
14 associated with the section 4030 claim by September 2005.  At that time, this Court made
15 plain that "a search without reasonable suspicion may take place consistent with section 4030
16 after:  (1) the three subdivision (g) conditions are met; and (2) the circumstances demonstrate
17 that the individual detainee is actually destined for the general jail population . . . ."  Sept. 9,
18 2005 Order (Dkt. 220) at 23; Feb. 23, 2006 Am. Mem. and Order (Dkt. 247) at 32.
19 Accordingly, because Plaintiffs knew or should have known of the need to address the
20 representation issues associated with the section 4030 claims even before <u>Bull</u>, <u>Bull</u> cannot
21 provide a basis for allowing them leave to add Vowell as a class representative for those
22 members of the class who now make up subclass 3.[5]

---

[5] Defendants filed a notice of appeal following both the September 2005 and February 2006 Orders, but proceedings were still actively ongoing in this Court until the March 27, 2006 Notice of Appeal (a period of roughly 6 months).  During that six month period Plaintiffs could have, but did not, seek to add additional representatives regarding their section 4030 claim.  (Plaintiffs became aware of Mr. Vowell on October 2, 2005.)  Moreover, Plaintiffs could even have sought to add representatives as to the section 4030 claim while the matter was on interlocutory appeal as to qualified immunity.  <u>See Alice L. Dusek</u>, 492 F.3d 563, 564-65 (5th Cir. 2007) (an interlocutory appeal "only divests the district court of jurisdiction over those aspects of the case on appeal."); <u>see also</u> <u>May v. Sheahan</u>, 226 F.3d 876 (7th Cir. 2000) ("The district court has authority to proceed forward with portions of the case not related to the claims on appeal, such as claims against other defendants or claims against the public official that

### 2. Defendants Will Not Be Unduly Prejudiced by Allowing Plaintiffs to Add Vowell as a New Representative for Subclass 2 But Would Be Unduly Prejudiced if Plaintiffs Are Allowed to Add Vowell as a New Representative for Subclass 3

In support of their argument that they will be unduly prejudiced if Plaintiffs are allowed to add Vowell, Defendants assert that evidence, including videotapes showing detainee movement and phone records logging calls, is no longer available and memories will have faded. Moreover, Defendants assert that the limited evidence they do have regarding Vowell's time in custody calls into serious question the veracity of his allegations. For example, Vowell's housing card reflects that he entered the jail at 9:41 p.m., property of his was released to a friend at 1:45 a.m., and he was released no later than 4:50 a.m. the next day. This is inconsistent with Vowell's allegations that he was held for more than 10 hours before being strip searched and, during that time, was not given access to a phone. Proposed Third Am. Cmpl. ¶ 45. According to Defendants, the inconsistencies between their limited records and Vowell's story underscore the prejudice because, although discovery taken several years ago may have poked additional holes in Vowell's story, at this point they have little other than the housing card on which to impeach him.

The Court finds Defendants' arguments compelling with respect to Plaintiffs' attempt to add Vowell as a representative for those class members now in subclass 3 but not for subclass 2. This is because the evidence necessary to establish liability in connection with subclass 2 involves mostly straightforward facts including primarily that subclass members were searched without reasonable suspicion without having been classified for housing. Thus, the basic facts necessary to challenge Vowell's claims as a representative of subclass 2 should be reasonably available to Defendants even after the passage of several years. However, the same cannot be said of Plaintiffs' attempt to add Vowell as a representative of what is now subclass 3. Defendants will be prejudiced by having to challenge Vowell as a representative of subclass 3 because establishing a violation of section 4030 requires proving

---

cannot be (or simply are not) appealed."); Perfect 10, Inc. v. Google, Inc., No. CV 04-9484 AHM (SHx), 2008 WL 4217837, at *6 (C.D. Cal. July 16, 2008) ("[D]istrict courts may not rule on motions to amend a complaint after a court of appeals accepts jurisdiction over an interlocutory appeal, <u>if the proposed amendment implicates factual or legal issues on appeal</u>.") (emphasis added) (citations omitted).

7

that Vowell was searched prior to having been given a reasonable opportunity of at least three hours in which to attempt to post bail. That will not involve simply consulting with a computer printout to determine time of arrest and time of search and seeing if less than three hours passed. Rather, it will involve determining whether, during the several hours he was in custody, a total time period of at least 3 hours existed when he could have made a call. Unfortunately, given how much time has passed since the events at issue, eyewitness evidence will be of questionable availability and/or utility, and various sources of other evidence (videotapes and phone logs, for example) are simply no longer available. Thus, Defendants are prejudiced by having to defend Vowell's allegations regarding the reasonableness of the opportunity or opportunities he had to post bail during his several hours in custody before being strip searched.[6]

### D. Conclusion

In light of the foregoing, the Court GRANTS Plaintiffs' Motion to Alter or Amend the Judgment in part and DENIES it in part. In particular, the Court finds that it committed clear error in preventing Plaintiffs from amending to add Vowell as a new named Plaintiff and Class Representative as to subclass 2 but not as to subclass 3. Thus, Plaintiffs are permitted to add Vowell as a named Plaintiff and class representative for subclass 2 but not subclass 3.

## II. MOTION TO DISMISS DAMAGES CLAIMS UNDER SECTION 4030

Defendants have moved to dismiss "all state-law strip-search claims brought by all Plaintiffs seeking damages and penalties based on alleged violations of Cal. Penal Code § 4030." Mot. to Dismiss (Dkt. 318) at 2. The basis for this Motion is that such claims are

---

[6] Plaintiffs argue that the delay in this case is not their fault and that Defendants should have preserved any potentially relevant evidence. The problem with this argument is that the Second Amended Complaint – the operative Complaint before proceedings recommenced in this Court following <u>Bull</u> – did not mention any issues with access to phones or otherwise put Defendants on notice that claims like Vowell's were going to be pressed. Rather, based on the Second Amended Complaint, Defendants were justified in assuming that Plaintiffs' section 4030 claim was going to be made essentially by way of computer records establishing who in the broader class were misdemeanor arrestees strip searched before being given three hours in which to post bail. "[R]ecords of, and maintained by defendants reflect who was subject to a strip and/or visual body vacity search, when the search occurred, where the search occurred . . . [and] the charges on which such persons were arrested . . . . [A]ll of the foregoing information is contained in defendants' computer system <u>and [] the information necessary to identify the class members . . . is readily available from said computer system.</u>" Second Amended Cmpl. ¶ 62 (emphasis added).

8

1 barred by California's immunity provision applicable to public entities. Cal. Gov. Code § 844.6.

The Court addressed this issue back in 2005-2006 and held that the City was <u>not</u> immune. Sept. 22, 2005 Mem. and Order (Dkt. 220) at 23-24; Feb. 23, 2006 Am. Mem. and Order (Dkt. 247) at 33. The basis for the Court's ruling was that, because section 4030 was enacted after section 844.6, "the later statute, [which] is more specific and does not limit suits [to individual defendants]" should control. <u>Id.</u> Notwithstanding the fact that the Court already addressed this issue, Defendants assert that the Court clearly erred and, further, that that error is revealed by subsequent decisions on this issue. Because the Court agrees that its initial decision on this matter was "clearly wrong," Defendants' Motion to Dismiss is GRANTED, and damage claims against the City arising under section 4030 are dismissed.

### A. Legal Standard

The precise basis for Defendants' Motion is unclear. Defendants do not specify whether the Motion to Dismiss is brought pursuant to Rule 12(b)(6) or Rule 12(b)(1), nor do they style it as a motion for reconsideration. Because the question presented here is a pure question of law that would require this Court to reverse its earlier ruling, the Court concludes that the proper standard for evaluating Defendants' Motion is the one governing motions for reconsideration.[7] That standard, described above, permits a court to overrule a prior order "'if the district court: (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law.'" <u>Circuit City Stores, Inc.</u>, 417 F.3d at 1063 n.1 (quoting <u>Sch. Dist. No. 13, Multnomah Cty.</u>, 5 F.3d at 1263). The district court should not reverse itself if its initial

---

[7] Although Defendants have not expressly moved for reconsideration, this Court can construe their motion to dismiss as a motion for reconsideration, <u>see</u> <u>Castro v. Terhune</u>, No. C 98-04877 WHA, 2010 WL 724683, at *2 (N.D. Cal. Mar. 1, 2010), and, in any case, this Court has inherent authority to revise its Orders. Fed. R. Civ. P. 56(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of judgement adjudicating all the claims and all the parties' rights and liabilities."); <u>see also</u> Fed. R. Civ. P. 59(e).

9

decision was merely wrong. Rather, it should do so only if the prior decision was "clearly" wrong. Leslie Salt, 55 F.3d at 1393.

### B.     Discussion
#### 1.     Relevant Statutory Provisions

Statutory interpretation starts with the language of the statute(s). Here, there are four statutory provisions whose interplay is important to determining whether the City is immune from damages: Cal. Gov. Code § 844.6(a)(2); Cal. Gov. Code § 820; Cal. Gov. Code § 820.2; and Cal. Penal Code § 4030.

Section 844.6(a)(2) provides in relevant part that "[n]otwithstanding any other provision of this part . . . a public entity is not liable for [a]n injury to any prisoner."

Section 820(a) provides in relevant part that, "[e]xcept as otherwise provided by statute[,] . . . a public employee is liable for injury caused by his act or omission to the same extent as a private person."

Section 820.2 provides in relevant part that, "[e]xcept as otherwise provided by statute . . . a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion is abused."

Section 4030, enacted after section 844, provides in relevant part as follows:

> (a) The Legislature finds and declares that law enforcement policies and practices for conducting strip or body cavity searches of detained persons vary widely throughout California. Consequently, some people have been arbitrarily subjected to unnecessary strip and body cavity searches after arrests for minor misdemeanor and infraction offenses. Some present search practices violate state and federal constitutional rights to privacy and freedom from unreasonable searches and seizures.
>
> It is the intent of the Legislature in enacting this section to protect the state and federal constitutional rights of the people of California by establishing a statewide policy strictly limiting strip and body cavity searches.
>
> . . . .
>
> (n) A person who knowingly and willfully authorizes or conducts a strip, visual or physical body cavity search in violation of this section is guilty of a misdemeanor.

10

> (o) Nothing in this section shall be construed as limiting any common law or statutory rights of any person regarding any action for damages or injunctive relief, or as precluding the prosecution under another provision of law any peace officer or other person who has violated this section.
>
> (p) Any person who suffers damage or harm as a result of a violation of this section may bring a civil action to recover actual damages, or one thousand dollars ($1,000), whichever is greater. In addition, the court may, in its discretion, award punitive damages, equitable relief as it deems necessary and proper, and costs, including reasonable attorney's fees.

There is nothing in the plain language of these statutes that compels the conclusion that section 4030 provides an exception to section 844 immunity. Of most importance on this issue, section 4030 does <u>not</u> say that public entities are subject to suit or expressly abrogate immunity. Accordingly, the plain language of the relevant provisions is at least as consistent with a determination that immunity exists as with one that holds that immunity has been abrogated.

### 2.    Legislative Purpose and History

In originally ruling on this issue, this Court concluded that immunity was abrogated because, in part, an absence of immunity would mean that only "individual officers" would be subject to suit. Sept. 22, 2005 Mem. and Order (Dkt. 220) at 23-24; Feb. 23, 2006 Am. Mem. and Order (Dkt. 247) at 33. The Court felt that this result would frustrate the purpose of the legislation without a clear basis in section 4030 for drawing a distinction between the two groups – public entities and individual officers – of potential defendants.

The Court's analysis did not adequately grapple with all the relevant statutory purposes or the ways in which those purposes can be effectuated even if the City is immune from damage claims.

Section 4030's purpose is "to protect the state and federal constitutional rights of the people of California by establishing a statewide policy strictly limiting strip and body cavity searches" and allowing people whose rights were violated to bring claims. Cal. Penal Code § 4030(a), (p). Critically, that purpose can be served, <u>even if public entities are afforded immunity from damages</u>, because section 844 does not bar claims for injunctive relief against

11

the public entity and damages can be obtained from individual defendants. Indeed, the limited legislative history supports the conclusion that the Legislature intended exactly this statutory scheme. "The bill would authorize misdemeanor punishment and would impose new duties <u>on local officials</u>, thereby imposing a state-mandated local program. The bill would also authorize civil damages for a violation of these provisions." Legislative Counsel's Digest, Defs.' Request for Judicial Notice (Dkt. 337) Ex. A (emphasis added).

Not only are section 4030's purposes served notwithstanding public entity immunity, but section 844's purposes are served as well. Allowing damage claims against the City may further section 4030's purposes, but it does not harmonize section 4030 with section 844.6.

### 3. Caselaw Subsequent to This Court's Initial Decision

More than one district court to consider this issue since this Court's initial ruling has held that section 844 immunity applies in section 4030 cases. For example, <u>Moyle v. County of Contra Costa</u>, No. C-05-02324 JCS, 2007 WL 4287315, at *15-*16 (Dec. 5, 2007 N.D. Cal. 2007) held that "claims under Penal Code section 4030 . . . were not intended to be excluded under section 844.6, even though [that] provision[] w[as] enacted after section 844.6." <u>Moyle</u>'s reasoning focused on the California Legislature's decision not to amend section 844.6 to cover section 4030 when other amendments to section 844.6 were made. <u>Id.</u> (citing <u>Kozlowski v. Sacramento Cty.</u>, No. C-04-0238 (E.D. Cal. Mar. 11, 2005)); see also <u>Holland v. City of San Francisco</u>, No. C10-2603 TEH (N.D. Cal. Dec. 7, 2010) ("[T]his Court interprets the legislature's inaction as preserving section 844.6's general immunity provisions, rendering them effective against section 4030(f).") (citing and disagreeing with this Court's prior holding on this issue).

### 4. Plaintiffs' Arguments Against Dismissal are Not Compelling

Plaintiffs raise several substantive arguments as to why this Court's initial ruling on this matter was correct. The Court addresses those arguments below.

//

//

12

#### a. Legislative Intent

Plaintiffs first argue that, in enacting section 4030, "[t]he Legislature intended to impose civil liability on law enforcement, a public agency, for violations of its statutory protections[.]" Opp'n to Defs.' Mot. to Dismiss (Dkt. 328) at 10. This argument is not compelling for two primary reasons.

First, contrary to Plaintiffs' position, "law enforcement" is not an identifiable public agency. That phrase can be used interchangeably to refer to either or both the public entities and the individual officers. Second, no one disputes that the public entity can be sued for injunctive relief. Combined with damages claims against individual officers, this imposes substantial obligations on "law enforcement" to comply with section 4030's terms. Thus, the fact that section 4030 refers to "law enforcement" does not show that the Legislature intended to abrogate public entity immunity from damage suits.

#### b. Failure to Amend Section 844.6

Plaintiffs next argue that the Legislature's failure to amend section 844.6 to exclude section 4030 claims provides no evidence that it intended for section 4030 damage claims against public entities to be barred. Plaintiffs are right that, standing alone, legislative inaction with respect to amending section 844.6 is not particularly revealing. County of Los Angeles v. Workers' Comp. Appeals Bd., 30 Cal. 3d 391, 404 (1981) ("The Legislature's failure to act may indicate many things other than approval of a judicial construction fo a statute . . . ."). However, legislative inaction is simply one piece of evidence, among others, that militates in favor of a conclusion that the Legislature did not intend to abrogate 844 immunity when it enacted section 4030. See Moyle, 2007 WL 4287315, at *15-*16.

#### c. Section 4030 is the More Specific Later Enacted Statute

Plaintiffs recite the general maxim that "a general provision is controlled by one that is special, the latter being treated as an exception to the former." Mason v. Mason, 224 Cal. App. 3d 634, 638 (1990). They reason from that proposition that, because section 4030 is the later enacted and more specific statute, it must be treated as an exception to 844.6's background immunity. The flaw in this argument is that section 4030 was silent as to public

1  entity immunity, so the maxim simply does not apply. Indeed, in Caldwell v. Montoya, the
2  California Supreme Court made clear that abrogation of immunity "can only be achieved by
3  a clear indication of legislative intent that statutory immunity is withheld or withdrawn in the
4  particular case." 10 Cal. 4th 972, 986 (1995). There is no such "clear indication" in section
5  4030, at least as pertains to damage claims as against public entities as opposed to
6  individuals.

7  Plaintiffs attempt to distinguish Caldwell on the ground that it was referring to statutes
8  imposing general legal duties rather than statutes, like section 4030, specifically directed
9  toward public officials and agencies. Opp'n to Defs.' Mot. to Dismiss (Dkt. 328) at 12. The
10 Court is unpersuaded by this argument. In support of their "later enacted specific statute"
11 argument Plaintiffs cite Bernard Osher Trust DTD v. City of Alameda, Nos. C 09-1437 SI, C
12 08-4575 SI, 2009 WL 2474716, at *2-*6 (N.D. Cal. Aug. 11, 2009). The statute at issue in
13 that case, the California Corporate Securities Law, provided that "any person who willfully
14 participates in any act or transaction" which violates the statute "shall be liable to any other
15 person" for damages. Id. at *2 (quoting Cal. Corp. Code § 25500). Critically, the California
16 Securities Law goes on to define "person" as, among other things, "a government, or a
17 political subdivision of a government." Id. Indeed, in holding that the California Corporate
18 Securities Law abrogated governmental immunity, the Bernard court noted that it (1)
19 "specifically includes public agencies within its ambit," (2) "explicitly includes public
20 entities in its coverage, and (3) "includ[ed] government entities in its definition of [those
21 liable]." Id. at *4 (emphasis added). The same cannot be said of section 4030. Although
22 "law enforcement" is broadly set out as the target of the legislation, there is no "specific" or
23 "explicit" statement that public entities are subject to damage suits, and the term "law
24 enforcement" is ambiguous. The Corporate Securities Law shows that the Legislature knew
25 how to abrogate immunity for public entities, and the fact that it chose not to use similar
26 language in section 4030 is further evidence of legislative intent not to abrogate immunity.
27 //
28 //

### d. Legislative Purpose

Plaintiffs' final argument is that granting public entities immunity from damages frustrates the purpose of section 4030, which was to create state wide policies that respect arrestee's rights. However, as already discussed, section 4030's purpose can be served with damage claims against individual personnel and injunctive relief against the public entity. Although abrogating public entity immunity from damage claims might <u>further</u> serve section 4030's purpose, it is not this Court's job to effectuate section 4030's purpose at the expense of the purposes served by governmental immunity. Rather, as matter of statutory interpretation, because the degree to which public entity immunity from damage claims frustrates section 4030's purpose is relatively modest (injunctive relief against the public entity and damage claims against individuals are still available), the Court cannot conclude that the Legislature intended to abrogate immunity by way of necessary implication. <u>Asis Interent Serv. v. Subscriberbase Inc.</u>, No. 09-3503 SC, 2010 WL 1267763, at *8 (N.D. Cal. Apr. 1, 2010) ("[T]here is a presumption against repeals by implication; they will occur only where the two acts are so inconsistent that there is no possibility of concurrent operation, or where the later provision gives undebatable evidence of an intent to supersede the earlier; the courts are bound to maintain the integrity of both statutes if they may stand together.") (quoting <u>People v. Bustamante</u>, 57 Cal. App. 4th 693, 699 (1997) (quoting <u>Sacramento Newspaper Guild v. Sacramento County Bd. of Supervisors</u>, 263 Cal. App. 2d 41, 54-55 (1968))).

### C. Conclusion as to Section 4030 Immunity Analysis

Defendants' Motion to Dismiss the section 4030 claim against the City to the extent it seeks damages against the City is GRANTED.

**IT IS SO ORDERED.**

Dated: December 16, 2010

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE